UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JERAMEY WALLGREN** | **CASE NO. 6:18-CV-01479** |
| **VERSUS** | **JUDGE SUMMERHAYS** |
| **DALE MARTIN OFFSHORE L L C** | **MAGISTRATE JUDGE WHITEHURST** |

## MEMORANDUM RULING

Presently before the Court is the Motion for Partial Summary Judgment on Plaintiff's Claim for Maintenance and Cure [doc. 15] filed by Dale Martin Offshore, L.L.C. and Intracoastal Tug and Barge Company, L.L.C. In the motion, Defendants seek to dismiss Plaintiff's claims for maintenance and cure. As explained below, the motion is GRANTED.

## I.
### BACKGROUND

On August 10, 2017, Jeramey Wallgren applied for employment with Dale Martin Offshore, L.L.C. and Intracoastal Tug and Barge Company, L.L.C. (collectively referred to as "DMO").[1] As part of the application process, DMO required Plaintiff to complete certain medical questionnaires.[2] DMO's medical questionnaires specifically asked if Plaintiff ever had or presently had any joint problems, limited motion in any joints, or shoulder injuries.[3] Plaintiff indicated in the medical questionnaires that he had never had any joint problems, limited motion in any joints, or shoulder injuries.[4] Plaintiff was hired as a deckhand for DMO.[5] Plaintiff was assigned to the towing vessel known as the M/V RELENTLESS.[6] Plaintiff alleges that on August 18, 2017, he

---

[1] Statement of Uncontested Facts at 2.
[2] Statement of Uncontested Facts, 3; Declaration of Krista Carpenter.
[3] Declaration of Krista Carpenter.
[4] *Id.*; Exhibit 2 to Document 15.
[5] Declaration of Krista Carpenter.
[6] Complaint at ¶ V.

1

was severely injured while working on the M/V RELENTLESS and suffered severe and disabling injuries to his right shoulder.[7]

Plaintiff filed suit against DMO on November 13, 2018, asserting three causes of action: (1) Jones Act negligence; (2) unseaworthiness; and (3) maintenance and cure. Defendants have filed the current motion arguing that Plaintiff is not entitled to maintenance and cure because he intentionally concealed and misrepresented a pre-existing injury to his right shoulder.

## II.
## LAW AND ANALYSIS

### A. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[8] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[10] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[11]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence

---

[7] *Id.* at ¶¶ VI-VII.
[8] Fed. R. Civ. P. 56(a).
[9] *Id.*
[10] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[11] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

2

supporting the moving party that is uncontradicted and unimpeached."[12] "Credibility determinations are not part of the summary judgment analysis."[13] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[14]

### B. Maintenance and Cure.

Maintenance and cure is a contractual form of compensation afforded by general maritime law to seamen who fall ill or are injured while in the service of a vessel.[15] Maintenance is a daily stipend for living expenses and cure is the payment of medical expenses.[16] "A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed."[17] In cases involving pre-existing conditions, as here, courts distinguish between nondisclosure and concealment.[18] "If a vessel owner does not require a pre-employment medical examination or interview, a seaman must disclose his condition when in [the seaman's] own opinion the shipowner would consider it a matter of importance."[19] "If, however, the vessel owner does require the seaman to submit to medical examination as part of its hiring process, a seaman who misrepresents or conceals any material medical facts, disclosure of which is plainly desired,

---

[12] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[13] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[14] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
[15] *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207 (5th Cir. 2006).
[16] *Lodrigue v. Delta Towing, L.L.C.*, No. Civ.A.03–0363, 2003 WL 22999425, at *6 n. 51 (E.D.La. Dec. 19, 2003) (citing *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir.1995), abrogated on other grounds by *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009)).
[17] *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (citing *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 549).
[18] *Id.*
[19] *Id.* (internal citations and quotations omitted).

risks forfeiture of his maintenance and cure benefits."[20] Accordingly, in cases where the seaman is required to submit to a medical examination or interview, to succeed on what has become known as a "*McCorpen* defense" the defendant must prove the following: "(1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit."[21]

DMO has submitted evidence indicating that on July 2, 2017, just 39 days prior to the time he sought employment with DMO, Plaintiff reported to the emergency room at Slidell Memorial Hospital and sought treatment for a right should injury resulting from lifting or carrying a heavy object. Plaintiff's medical records indicate that he suffered from "limited active range of motion due to pain in the right shoulder, limited passive range of motion due to pain in the right shoulder."[22] Plaintiff underwent an X-ray of his right shoulder, was given a sling for his injured right shoulder, and was instructed to follow-up with an orthopedic surgeon. Plaintiff was also prescribed narcotic pain relievers, anti-inflammatories, and muscle relaxers upon discharge.[23]

### 1. Did Plaintiff Intentionally Misrepresent or Conceal his Prior Right Shoulder Injury?

Since DMO required Plaintiff undergo a pre-employment medical examination and fill out a medical questionnaire, the purely objective, "intentional concealment" standard applies to DMO's *McCorpen* defense.[24] "*McCorpen*'s intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination."[25] "Failure to disclose medical

---

[20] *Id.*
[21] *Id.*
[22] Exhibit 1 to Document 15.
[23] *Id.*
[24] *See Soileau v. Baywater Drilling, LLC*, No. 17-710, 2018 WL 3637934, at *6 (W.D. La. July 31, 2018) (applying objective, intentional concealment standard where plaintiff submitted medical history questionnaire).
[25] *Id.* (quoting *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005)); *see also LeBlanc v. LA Carriers, LLC*, No. 15-1657, 2016 WL 1268342, at *7-9 (E.D. La. Mar. 31, 2016) (explaining that the subjective intent of the plaintiff is irrelevant).

4

information in an interview or questionnaire that is obviously designed to elicit such information . . . satisfies the 'intentional concealment' requirement."[26]

On August 10, 2017, DMO required Plaintiff to submit to a pre-employment medical examination by Complete Occupational Health Services in Larose, Louisiana. During this examination, Plaintiff completed an Application for Merchant Mariner Medical Certification, which contained several questions regarding Plaintiff's current and past medical conditions and treatment.[27] Plaintiff was specifically asked

> To the best of your knowledge, have you ever had, required treatment for, or do you presently have any of the following conditions?
>
> \*\*\*
>
> 29. Back pain, joint problems, or orthopedic surgery
>
> \*\*\*
>
> 31. Fractures, recurrent dislocations or limitation of motion of any joint.[28]

Plaintiff marked "No" to those questions. The Application then instructed Plaintiff to:

> Circle Y for Yes and N for No if you currently have the following symptoms or have in the past:
>
> Injured shoulder
> Any joint problems

Plaintiff circled N to each of those issues.[29]

Plaintiff first argues that he did not suffer a prior shoulder "injury" but was rather treated for "shoulder pain." Plaintiff's play at semantics is unpersuasive and is contradicted by the evidence. An "injury" is defined and commonly known as "physical harm or damage."[30] Further,

---

[26] *Brown*, 410 F.3d at 174.
[27] Exhibit 2 to Document 15.
[28] *Id.*
[29] *Id.*
[30] Merriam-Webster.com

5

the medical records from Slidell Memorial Hospital repeatedly reference a "shoulder injury" and further note that the patient indicated "right shoulder pain, audible pop with injury" and that he "complains of an injury, heavy lifting and pulling, right shoulder."[31] The records further note "the problem was sustained at home, resulted from lifting or carrying a heavy object."[32] In sum, Plaintiff suffered a shoulder injury and he did not disclose this injury on the DMO Application.

Plaintiff next asserts that he actually disclosed the injury because he advised Larry Barras, a port captain employed by DMO, that he had recently taken medication due to the shoulder injury. DMO has submitted Barras' declaration, which disputes that Plaintiff advised him of either a prior injury or that he was prescribed medication.[33] Moreover, the Fifth Circuit has specifically ruled:

> [I]f a seaman intentionally provides false information on a pre-employment medical questionnaire and certifies that the information therein is true and correct, that seaman may not later argue that his concealment was not intentional based on his statement, which the employer disputes, that he verbally disclosed medical information that contradicted the written questionnaire.[34]

Accordingly, there is no genuine issue of material fact regarding the first element of the *McCorpen* test. Plaintiff intentionally misrepresented or concealed a pre-existing shoulder injury.

### 2. Was the pre-existing shoulder injury material to DMO's decision to hire Plaintiff?

The second prong of the *McCorpen* defense requires a defendant to demonstrate that the concealed or non-disclosed facts were material to the employer's decision to hire the claimant.[35] If the claimant would have been hired regardless of the disclosure, then concealment or non-disclosure does not bar the seaman's recovery of maintenance and cure.[36] DMO has submitted the declaration of its Human Resources Manager, Krista Carpenter who has the authority to offer and

---

[31] Exhibit 1 to Document 15
[32] *Id.*
[33] Exhibit 1 to Document 26.
[34] *Meche v. Doucet*, 777 F.3d 237, 247 (5th Cir. 2015).
[35] *Brown v. Parker Drilling*, 410 F.3d 166, 171 (5th Cir. 2005) (citing *McCorpen*, 396 F.2d at 548-549).
[36] *Jauch v. Nautical Services, Inc.,* 470 F.3d 207, 212 (5th Cir. 2006)

rescind employment.[37] According to Ms. Carpenter, the deckhand position requires heavy lifting, pulling and other strenuous labor; accordingly, it is important to DMO to know of any physical limitations of employees as it directly affects their safety and the safety of others.[38] Ms. Carpenter indicates that DMO would not have hired Plaintiff as a deckhand if they had been aware of his prior shoulder injury.[39]

Plaintiff's only evidence to rebut this showing is that he verbally advised Larry Barras of his prior injury and was still hired by DMO. However, as previously discussed by the Court, DMO has submitted the Declaration of Mr. Barras specifically rebutting this allegation. The Court finds that there is no genuine issue of material fact regarding the second prong of the *McCorpen* test. DMO has established that they would not have hired Plaintiff had they been aware of his prior shoulder injury.

### 3. Was there a connection between the withheld information and the injury complained of in the lawsuit?

The third, and final, *McCorpen* prong requires the shipowner to prove that "a connection exists between the withheld information and the injury complained of in the lawsuit."[40] The Fifth Circuit has consistently explained that there is no requirement that a present injury be identical to a previous injury.[41] Rather, the shipowner need only prove that the old injury and the new injury affect the same body part.[42]

Here, both the prior injury that Plaintiff failed to disclose and the current injury involved Plaintiff's right shoulder. Plaintiff argues that even if the Court finds that he is not entitled to

---

[37] Exhibit 3 to Document 15.
[38] *Id.*
[39] *Id.*
[40] *Jauch*, 470 F.3d at 212.
[41] *See Thomas v. Hercules Offshore Servs., LLC*, 713 F. App'x 382, 389; *Brown*, 410 F.3d at 176
[42] *Soileau v. Baywater Drilling, LLC*, 2018 WL 3637934, at *10; *Carter v. Parker Towing Co., Inc.*, 2018 WL 2065577, at *6; *LeBlanc v. LA Carriers, LLC*, 2016 WL 1268342, at *5-6; *Ladnier v. REC Marine Logistics, LLC*, No. 14-1278, 2015 WL 3824382, *5-6 (E.D. La. June 19, 2015); *Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 728 (E.D. La. 2009).

maintenance and cure as to the shoulder injury, he also suffers from an additional injury, namely psychological trauma resulting from his injury. DMO has conceded that their motion is limited to the shoulder injury. The Court concludes there is no genuine issue of material fact as to the third prong of the *McCorpen* test regarding Plaintiff's alleged shoulder injury.

### III.
### CONCLUSION

For the foregoing reasons, the Court finds that DMO has established each element of the *McCorpen* test and, accordingly, is entitled to partial summary judgment dismissing Plaintiff's claims for maintenance and cure relating to his alleged shoulder injury. A separate order in conformity with the foregoing reasons will be entered.

THUS DONE in Chambers on this ___10th___ day of March, 2020.

Robert R. Summerhays
United States District Judge